Filed 10/13/20  P. v. Ruiz CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D076092 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. PLBC1504) |
| ALEJANDRO RUIZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County,

Kathleen M. Lewis, Judge.  Affirmed.

Kristen E. Owen, under appointment by the Court of Appeal, for Defendant and

Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney

General, Julie L. Garland, Assistant Attorney General, Robin H. Urbanski and Yvette M.

Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

Alejandro Ruiz, a high-risk sex offender, removed his GPS tracking device and absconded while on parole. He opposed a petition to revoke parole on the grounds that he was not eligible to be assessed as a high-risk sex offender and, therefore, should have been under postrelease community supervision (PRCS) rather than parole.

The superior court rejected Ruiz's contentions, determining that (1) the California Department of Corrections and Rehabilitation (CDCR) lawfully evaluated Ruiz for parole because he is required to register as a sex offender; (2) the court lacked authority to rescore Ruiz's assessment as a high-risk sex offender; and (3) Ruiz's claims were time-barred under Penal Code[1] section 3000.08, subdivision (l) [hereafter, section 3000.08(l)].

We affirm. Ruiz's claim that he should have been released from prison under PRCS rather than parole is time-barred, making it unnecessary to consider his other contentions.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Sexual Battery Conviction*

In 1995, Ruiz (then 18 years old) pled guilty to one felony count of sexual battery (§ 243.4, subd. (a)). After Ruiz violated probation by participating in a gang assault, the court sentenced him to two years in prison.

---

[1]     Undesignated statutory references are to the Penal Code.

2

B. *Other Criminal History*

In 1997, Ruiz was paroled; however, after he violated parole by failing to register as a sex offender, the court ordered him returned to prison. Ruiz was discharged from parole in 1999.

In 2002, Ruiz pled guilty to driving under the influence (Veh. Code, § 23152, subd. (a)) and was placed on five years' probation.

In 2008, Ruiz pled guilty to possessing a controlled substance (Health & Saf. Code, § 11357, subd. (c)). The court placed him on three years' probation.

In 2013, after Ruiz pled guilty to second degree burglary (§ 459), the court again placed him on probation. The court terminated probation after Ruiz violated its terms three separate times.

C. *Vehicle Theft and Parole*

In 2016, Ruiz pled guilty to vehicle theft and failure to appear (Veh. Code, § 10851; § 1320.5). After Ruiz twice violated his probation, the court sentenced him to two years in prison.

In 2017, Ruiz was released from prison and placed on parole. Before releasing Ruiz, CDCR assessed him under Static-99R, a risk assessment screening for registered sex offenders. Ruiz's Static-99R score is four. Under CDCR policy, a person with a Static-99R score of four or higher is designated a high-risk sex offender and is placed on parole, whereas those scoring three or less are placed in PRCS.

Ruiz's parole agent reviewed with him the special conditions of parole, as well as Ruiz's right to appeal those conditions. The agent did not give Ruiz his Static-99R

3

scoring sheet (Ruiz, through his attorney, did not ask for it until later), nor did the agent discuss with Ruiz the basis for his placement on parole as distinguished from PRCS.

Between January and September 2018, Ruiz committed four parole violations, including removing his GPS device and absconding.

D.  *Petition to Revoke Parole Supervision and Motion to Dismiss*

In February 2019, CDCR filed a petition to revoke Ruiz's parole, alleging that in December 2018 Ruiz again removed his GPS tracking device and absconded.  Ruiz's attorney filed a motion to dismiss this petition, asserting that under Static-99R coding rules, Ruiz was ineligible to be assessed on the Static-99R because Ruiz had been in the community for over 10 years without any sex offenses.  Defense counsel asserted that as a result, Ruiz should have been released under PRCS, not parole.

Opposing Ruiz's motion and citing section 1203.2, subdivision (a), the People asserted that the superior court is "statutorily prohibited" from terminating parole.[2]  Alternatively, citing section 3000.08(l), the People asserted that Ruiz's claim was time-barred.[3]

The court conducted an evidentiary hearing.  The parties stipulated to the admissibility of Ruiz's Static-99R scoring sheet.  That scoring sheet reports Ruiz's score as four.  However, the scoring sheet also states:

_____

[2]    Section 1203.2, subdivision (a) addresses parole violations and states in part, "[T]he court shall not terminate parole pursuant to this section."

[3]    Section 3000.08(l) provides in part, "Any person released to parole supervision pursuant to subdivision (a) shall, . . . remain subject to subdivision (a) after having served 60 days under supervision pursuant to subdivision (a)."

4

"[Ruiz] is not eligible to be scored under the official Static-99R coding rules. More specifically, because it [*sic*] was ten years offense free in the community, thus making the Static-99R assessment score invalid."

Ruiz's Static-99R scoring sheet thus inconsistently states that he is a high-risk sex offender, and also that the assessment is "invalid." To clarify, a parole agent supervisor testified that prior to 2016, if an offender remained offense free for 10 years, that person's Static-99R score was considered "invalid." However, in 2016, CDCR received an "update from the master trainer" that the 10-year rule was no longer applicable "so [that] any future coding, although an offender may remain ten years offense free, that . . . score would still remain valid."[4] The supervisor testified that Ruiz's Static-99R score of four was, therefore, correct because Ruiz was assessed in 2017. He further explained that the statement about ineligibility in Ruiz's score sheet is for internal CDCR purposes only, indicating that CDCR is "not to forward the Static-99[R] score and person's name and information to Megan's Law for reporting."[5]

After determining that it had jurisdiction to hear Ruiz's motion, the superior court ruled that (1) CDCR "lawfully evaluated [Ruiz] using the Static-99R . . . ;" and (2) CDCR alone had authority to score the Static-99R as part of its "regulatory . . . oversight."

---

[4] Ruiz was not free of criminal offenses for 10 years. The record does not explain why his Static-99R scoring sheet would erroneously state that he was "ten years offense free in the community . . . ."

[5] The parties also stipulated to the admission of a defense expert's report on Ruiz's sexual recidivism. Because Ruiz's contention that he should have been placed on PRCS is time-barred, we do not further consider the expert's report.

Additionally, the superior court ruled that the "plain language" of section 3000.08(l) "indicates that the parolee has 60 days to appeal his parole determination," and Ruiz "has far exceeded the 60-day period . . . ."  The court noted that "[i]f an error is made in the placement of an offender on PRCS versus parole . . . there is the practical necessity of timeliness to challenge such a determination."  Elaborating, the court stated:

> "There appears to be practical reasons for not transferring jurisdiction of a person on parole to PRCS after an extended period of time on parole . . . .  [T]he parole agency has supervised the offender for an extended period of time and knows the risks and needs of the offender, the habits and lifestyle of the offender, the red flags, et cetera, and it provides the offender him- or herself consistency in the ability to predict what is and is not acceptable and know expectations in terms of supervision, among other things."

Accordingly, the court determined that Ruiz's claim was time-barred and "waived."

## DISCUSSION

### I.  *THE COURT CORRECTLY DENIED RUIZ'S MOTION TO DISMISS BECAUSE HIS CLAIM IS TIME-BARRED*

#### A.  *Relevant Law*

Section 3000.08, subdivision (a) provides in part that a high-risk sex offender who is released from prison shall be subject to parole supervision.  Subdivision (b) of this statute provides that certain other offenders released from prison are to be placed on PRCS.

Section 3000.08(l) provides:

> "Any person released to parole supervision pursuant to subdivision (a) shall, regardless of any subsequent determination that the person should have been released pursuant to subdivision (b), remain

6

subject to subdivision (a) after having served 60 days under supervision pursuant to subdivision (a)."

Under this statute, a person released on parole must so remain, even if he or she should have been released to PRCS, if the person has already served 60 days under parole supervision. (See *People v. Johnson* (2020) 45 Cal.App.5th 379, 403 (*Johnson*).)[6]

B. *Additional Facts—Ruiz Served Over 60 Days on Parole*

The parties stipulated that on July 10, 2017, CDCR released Ruiz from prison and placed him under parole supervision. The parties also stipulated that Ruiz first asserted his ineligibility for parole on March 22, 2019, and "[e]xcluding custody time and [warrant time]," by then Ruiz had served 100 days on parole.

C. *Ruiz's Contentions on Timeliness Issues*

On appeal, Ruiz contends that the 60-day time limit in section 3000.08(l) does not apply because he is "not directly appealing his parole classification or any terms or conditions of parole," but instead is appealing his "eligibility to be scored under the Static-99R and the validity of the score itself . . . ." To support this contention, Ruiz cites *People v. Toussain* (2015) 240 Cal.App.4th 974, but only to point out that *Toussain* declined to reach this issue. Ruiz does not analyze or explain how the text of section

_____

6    *Johnson*, *supra*, 45 Cal.App.5th 379 holds that (1) in cases where CDCR admits error in scoring an offender's Static-99, the superior court has authority "to consider the issue of whether the defendant was improperly placed on parole supervision rather than PRCS and, if appropriate, to order that supervision be transferred from parole to PRCS . . ."; and (2) the 60-day period in section 3000.08(l) excludes time the offender has spent in custody due to parole violations. (*Johnson*, at pp. 402 & fn. 16, 404–405.) The opinion in *Johnson* was filed shortly before Ruiz's reply brief was due. We invited the parties to file, and we have reviewed, supplemental briefs addressing *Johnson's* impact on issues Ruiz raised in his opening brief.

7

3000.08(l) states or even suggests that the time within which to challenge eligibility issues, as distinct from challenging special conditions of parole, is not governed by section 3000.08(l).

Ruiz also asserts that he "did not have notice" of his Static-99R score until February 2019 when his lawyer asked him to sign a release to obtain it. Ruiz contends that he "could not have raised the issue any sooner than he did because he was unaware of the error."

Ruiz concedes that his parole agent discussed his right to appeal conditions of his parole. However, Ruiz contends that the agent did not advise him of his right to contest his placement on parole, failed to give Ruiz a copy of his Static-99R scoring sheet, and never explained the process for appealing placement on parole. Ruiz contends that if the court determines his claim to be time-barred, then the court "implicitly will be providing persons in a situation similar to [Ruiz] no avenue for appeal."

D. *Ruiz's Motion to Dismiss is Time-Barred under Section 3000.08(l)*

Ruiz's first contention—that the 60-day rule in section 3000.08(l) applies only when challenging conditions of parole—and not to the distinct issue of parole eligibility—is forfeited. Ruiz cites no legal authority and makes no argument based on the statute's text to support such an interpretation. (*People v. Halim* (2017) 14 Cal.App.5th 632, 644, fn. 8 [" '[i]ssues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived' "].)

8

Moreover, even if not forfeited, we would reject the argument. "Our first and most important responsibility in interpreting statutes is to consider the words employed; in the absence of ambiguity or conflict, the words employed by the Legislature control . . . ." (*People v. Jacobs* (2000) 78 Cal.App.4th 1444, 1450.)

Section 3000.08(l) provides that "after having served 60 days under [parole] supervision," (1) "[a]ny person"; (2) "released to parole supervision pursuant to subdivision (a)"; (3) "shall"; (4) remain on parole; (5) "regardless of any subsequent determination that the person should have been released" under PRCS. These unambiguous terms are both mandatory and broadly inclusive.

Section 3000.08(l) is mandatory because it provides that the person "shall" remain on parole supervision. (*People v. Standish* (2006) 38 Cal.4th 858, 869 ["Ordinarily, the term 'shall' is interpreted as mandatory and not permissive"].) The 60-day mandatory time limit is also broadly inclusive. This time limit applies to all challenges to parole supervision because the Legislature provided that the person shall remain on parole supervision "regardless" of "any" later determination that the person should have been released under PRCS. (See *Lopez v. Sony Electronics, Inc.* (2018) 5 Cal.5th 627, 635 [" 'Any' is a term of broad inclusion, meaning 'without limit and no matter what kind' "].)

Thus, regardless of whether Ruiz challenges the special conditions of parole, or his eligibility for parole—under the plain language in section 3000.08(l) he must remain on parole because he has served more than 60 days on parole supervision prior to raising his claim.

In a related argument, Ruiz also contends that the 60-day time limit should not apply because he "did not have notice" of his Static-99R scoring sheet until February 2019 when his lawyer asked him to sign a release to obtain it. He contends that he "could not have raised the issue any sooner than he did because he was unaware of the error."

The unstated premise in Ruiz's argument is that the 60-day period in section 3000.08(l) is not triggered until a parolee has actual knowledge of grounds indicating that parole supervision is inappropriate. However, Ruiz cites no case, nor does Ruiz cite any language in section 3000.08(l) to support such an interpretation. We decline to read into section 3000.08(l) an actual knowledge requirement that is not supported by the statute's text or any other cited authority. (See *People v. Leal* (2004) 33 Cal.4th 999, 1008 [" ' "In the construction of a statute . . . the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted" ' "].)

Moreover, in July 2017, Ruiz's parole agent informed Ruiz of his right to administratively appeal his parole supervision. Although the agent did not provide Ruiz with the Static-99R scoring sheet, CDCR makes the scoring sheet available upon the parolee's written authorization for its release. Thus, Ruiz's Static-99R scoring sheet was available for his asking at any time.

Because the superior court correctly determined that Ruiz's request to terminate parole is time-barred under section 3000.08(l), it is unnecessary to consider whether the superior court had authority under *Johnson*, *supra*, 45 Cal.App.5th 379 to order his supervision transferred to PRCS.

10

DISPOSITION

The order is affirmed.

AARON, J.

WE CONCUR:

BENKE, Acting P. J.

GUERRERO, J.