Filed 2/10/23

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E078534 |
| v. | (Super.Ct.No. RIF128096) |
| GABRIEL MANUEL MENDOZA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. John D. Molloy, Judge. Affirmed.

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Laura Baggett, Deputy Attorneys General, for Plaintiff and Respondent.

Penal Code section 1385 was recently amended to provide that "[n]otwithstanding any other law," a sentencing court "shall dismiss" a sentence enhancement "if it is in the furtherance of justice to do so," subject to certain exceptions. (Pen. Code, § 1385, subd. (c)(1) (§ 1385(c)(1)); unlabeled statutory references are to this code.) The amended statute further provides that "[i]n exercising its discretion under this subdivision," the trial court "shall consider and afford great weight" to certain "mitigating circumstances," if proven by the defendant. (§ 1385, subd. (c)(2) (§ 1385(c)(2)).) "Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (*Ibid.*)

One of the listed mitigating circumstances is that "application of an enhancement could result in a sentence of over 20 years." (§ 1385, subd. (c)(2)(C) (§ 1385(c)(2)(C)).)[1] The statute provides that if that circumstance is present, "the enhancement shall be dismissed." (*Ibid.*)

In 2021, the Department of Corrections and Rehabilitation (the Department) sent a letter to the superior court recommending that it resentence Gabriel Manuel Mendoza because of errors in his original sentence. Mendoza was resentenced in 2022, after the relevant amendments to section 1385 became effective. The trial court concluded that section 1385(c)(2)(C) does not always require dismissal of a firearm enhancement under

---

[1] The mitigating circumstances originally were listed under subdivision (c)(3) of section 1385. (Former § 1385, subd. (c)(3)(A)-(I); Stats. 2021, ch. 721.) Effective June 30, 2022, Assembly Bill No. 200 (2021-2022 Reg. Sess.) amended the statute to list them under section 1385(c)(2). (Stats. 2022, ch. 58, § 15.)

2

section 12022.53, subdivision (c), even when imposition of the 20-year sentence for that enhancement results in a sentence of over 20 years.

On appeal, Mendoza argues that under section 1385(c)(2)(C) dismissal of the enhancement was mandatory, not discretionary. We conclude that section 1385(c)(2)(C) does not mandate dismissal of an enhancement when the court finds that dismissal would endanger public safety. We also conclude that the trial court did not abuse its discretion by imposing the enhancement, and we therefore affirm.

BACKGROUND

One night in January 2006, law enforcement officers responded to a house where a robbery had been reported. There were five victims at the scene. One of the victims rented a room at the house, and the others were visiting. While the victims were all inside a bedroom, a person later identified as Mendoza kicked the bedroom door open.

Mendoza pulled a gun out of his pocket and said something like "'I am going to teach you guys not to mess with my lady.'" He held the gun barrel against the chest of one of the victims, Miguel M. Mendoza directed everyone to empty their pockets and give him their money and wallets. Miguel hesitated because he did not believe that the gun was real. Mendoza attempted to fire a bullet into the television, but the gun jammed. Mendoza then successfully fired a single shot into the television, re-aimed the gun at Miguel, and demanded Miguel's money. Miguel gave Mendoza his wallet.

Two female victims escaped through a bedroom window when the gun jammed. An unidentified man entered the room through the open window. Mendoza tossed Miguel's wallet to that man. After Miguel gave Mendoza his wallet, Mendoza aimed the

3

gun at everyone else in the room and demanded that they give him their money.  After Mendoza took everyone's property, he grabbed his girlfriend, "who was also in the bedroom, and forced her to leave with him."  Mendoza took car keys from one of the victims and drove away in that car with his girlfriend.

Mendoza later denied everything and claimed that all the victims had lied.  Mendoza was 23 years old when the offenses were committed.

In 2007, a jury convicted Mendoza of two counts of first degree robbery (§ 211), along with other offenses.  With respect to both robbery offenses, the jury found true the allegation that Mendoza intentionally and personally discharged a firearm.  (§ 12022.53, subd. (c).)  The trial court sentenced Mendoza to 29 years and eight months in state prison, consisting of the "mid term of 6" years for the first robbery count, 20 years for the related firearm enhancement, one-third "the mid term of 6 years for a total of 2 years" on the second robbery count, a one-year prior prison term enhancement under section 667.5, and eight months (one-third the midterm) for possession of a controlled substance. (Capitalization omitted.)  Mendoza appealed, but the case was dismissed at Mendoza's request before briefing.  (*People v. Mendoza* (E043699).)

In 2021, the Department notified the superior court that Mendoza appeared to have been improperly sentenced on the robbery counts.  The Department indicated that the appropriate sentencing triad for the robbery convictions appeared to be three, four, or six years.  (See § 213, subd. (a)(1)(B).)

Mendoza then moved for "recall and resentencing" and argued that under Senate Bill No. 136 (2019-2020 Reg. Sess.) the court should not impose any prior prison term

4

enhancements.  (Initial capitalization omitted.)  He asked the court to take into consideration the rehabilitative efforts he has made in prison, which he claimed included renunciation of his prior gang affiliation and participation in numerous self-help groups. He did not provide certificates of completion or any other evidence corroborating his unsworn statements.

In January 2022, the trial court held a hearing concerning resentencing.  The People and appointed counsel for Mendoza filed sentencing briefs before the hearing. The parties agreed with the Department that Mendoza's robbery sentences were incorrect and that Mendoza was entitled to have his sentence recalled and to a full resentencing.[2] Mendoza argued that newly added section 1385(c)(2)(C) required the court to dismiss the firearm enhancement under subdivision (c) of section 12022.53.  The People argued that the court had discretion to dismiss the enhancement and urged the court to decline to exercise that discretion.  The court ordered further briefing on the issue and continued the hearing.

The court resentenced Mendoza on the continued hearing date.  The court determined that Mendoza's youth contributed to the commission of the robbery, so the court applied the newly applicable low-term presumption under section 1170, subdivision (b)(6), and sentenced Mendoza to the three-year low term for the first robbery count.  As to the related firearm enhancement under subdivision (c) of section 12022.53, the court

---

[2]     Mendoza was sentenced pursuant to the sentencing triad that applies when a "defendant, voluntarily acting in concert with two or more other persons, commits the robbery within an inhabited dwelling house" (§ 213, subd. (a)(1)(A)), but he acted in concert with only one person when he committed the offenses.

5

rejected Mendoza's argument that section 1385(c)(2)(C) mandated dismissal of the enhancement. In interpreting section 1385(c)(2), the court concluded "that the most natural and logical interpretation of the provision is that if dismissing the enhancement would endanger the public, the Court does not even engage in evaluating the mitigating factors. This [reflects] the strong interest in protecting the public, especially from firearms, which tends to be a commonly charged enhancement."

Analyzing whether dismissal of the enhancement in Mendoza's case would endanger public safety, the court found that "the facts of this case support the conclusion that dismissal of the enhancement would endanger public safety," and the court therefore declined to dismiss the enhancement. The court explained: Mendoza "committed a home invasion robbery with a gun. He discharged a firearm inside the residence and the six factors listed above by the People support [that Mendoza] engaged in . . . incredibly harmful and dangerous conduct likely having long lasting impact on the victims." The factors identified by the People and considered by the court were the following: (1) Mendoza's use of a firearm was the primary means by which he effectuated the robbery; (2) Mendoza repeatedly pointed the gun at a victim's chest; (3) Mendoza was able to "overcome several victims" because he used a gun; (4) Mendoza's use of the gun "was meant to communicate a threat to kill or put in great harm"; (5) "the mere sound of the discharge of the firearm is terrifying to victims"; and (6) Mendoza increased the risk of harm to untargeted victims by discharging the gun in a residential area. The court further explained its ruling as follows: "Somebody who chooses to commit this type of an offense is a serious threat to society and a relatively long prison sentence is necessary to

6

protect the public and keep the defendant away from the public and to provide time for the defendant to become rehabilitated. Both through programs in prison and through time to reflect on these crimes and mature in himself. If the Court were to dismiss the enhancement in this case, the aggregate sentence for this terrifying home invasion robbery would be reduced to a mere five years and eight months. This sentence is inappropriately short and would not effectuate the goals of sentencing given the facts, reducing the sentence poses a likelihood that the defendant will commit a crime that results in physical injury or serious danger to others."

In addition to declining to dismiss the firearm enhancement under section 12022.53, subdivision (c), the court also declined to exercise its discretion to impose an uncharged lesser included enhancement under section 12022.53, subdivision (h), and *People v. Tirado* (2022) 12 Cal.5th 688, 692. The court thus imposed a 20-year sentence for the enhancement and sentenced Mendoza to a total term of 26 years and eight months in state prison.

## DISCUSSION

Mendoza argues that the trial court erred by not dismissing the firearm enhancement, because the plain language of section 1385(c)(2)(C) required the trial court to dismiss it. He alternatively argues that the trial court abused its discretion by concluding that dismissal of the enhancement would endanger public safety. We reject both arguments.

A.    *Dismissal Is Not Required If It Would Endanger Public Safety*

We first analyze whether under section 1385(c)(2)(C) a court is required to dismiss an enhancement whenever application of the enhancement "could result in a sentence of over 20 years." We independently review questions of statutory interpretation. (*Walker v. Superior Court* (2021) 12 Cal.5th 177, 194.)

In interpreting a statute, our primary goal "'is to determine the Legislature's intent so as to effectuate the law's purpose.'" (*People v. Ruiz* (2018) 4 Cal.5th 1100, 1105.) "'Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning.'" (*Ibid.*) We do not "consider the statutory language 'in isolation.'" (*People v. Murphy* (2001) 25 Cal.4th 136, 142 (*Murphy*).) "Rather, we look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . .'" (*Ibid.*) "That is, we construe the words in question "'in context, keeping in mind the nature and obvious purpose of the statute . . . .""' (*Ibid.*) "We must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.'" (*Ibid.*) "'If the statutory language is unambiguous, then its plain meaning controls.'" (*Ruiz*, *supra*, at p. 1106.) We "avoid 'interpretations that render any language surplusage.'" (*Brennon B. v. Superior Court* (2022) 13 Cal.5th 662, 691 (*Brennon B.*).) We also "'do not presume that the Legislature intends, when it enacts a statute, to overthrow long-established principles of law unless such intention is

8

clearly expressed or necessarily implied.'" (*Lopez v. Sony Electronics, Inc.* (2018) 5 Cal.5th 627, 637 (*Lopez*).)

Effective January 1, 2022, Senate Bill No. 81 (2021-2022 Reg. Sess.) amended section 1385 to include subdivision (c). (Stats. 2021, ch. 721.) Section 1385(c)(1) provides that "[n]otwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." (§ 1385(c)(1); Stats. 2021, ch. 721.) Section 1385(c)(2) provides as follows: "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." One of the mitigating circumstances is: "The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed."**3** (§ 1385(c)(2)(C).)

---

**3** The listed mitigating circumstances are: "(A) Application of the enhancement would result in a discriminatory racial impact as described in paragraph (4) of subdivision (a) of Section 745. [¶] (B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed. [¶] (C) The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed. [¶] (D) The current offense is connected to mental illness. [¶] (E) The current offense is connected to prior

Mendoza argues that the statute mandates dismissal of every enhancement that "could result in a sentence of over 20 years," as the firearm enhancement does in his case, because section 1385(c)(2)(C) states that such an enhancement "*shall be dismissed*." (Italics added.) (§ 1385(c)(2)(C).) We disagree.

We interpret the "shall be dismissed" directive in section 1385(c)(2)(C) not in isolation but by harmonizing the various parts of subdivision (c) of section 1385 and by considering the requirement in section 1385(c)(2)(C) "'in the context of the statutory framework as a whole.'" (*Murphy*, *supra*, 25 Cal.4th at p. 142.)

Section 1385(c)(2) provides that in determining whether to dismiss an enhancement "under this subdivision," the court must consider nine listed mitigating circumstances if proven by the defendant (§ 1385, subd. (c)(2)(A)-(I)), "unless the court finds that dismissal of the enhancement would endanger public safety" (*id.*, subd. (c)(2)). That provision means that if the court finds that dismissal of an enhancement "would endanger public safety," then the court need not consider the listed mitigating circumstances.[4] (*Ibid.*) The "shall be dismissed" language in section 1385(c)(2)(C), like

_____

victimization or childhood trauma. [¶] (F) The current offense is not a violent felony as defined in subdivision (c) of Section 667.5. [¶] (G) The defendant was a juvenile when they committed the current offense or any prior offenses, including criminal convictions and juvenile adjudications, that trigger the enhancement or enhancements applied in the current case. [¶] (H) The enhancement is based on a prior conviction that is over five years old. [¶] (I) Though a firearm was used in the current offense, it was inoperable or unloaded." (§ 1385, subd. (c)(2)(A)-(I).)

[4]     Moreover, if the court finds that dismissal of an enhancement "would endanger public safety" (§ 1385(c)(2)), then it is difficult to imagine the circumstances under which dismissal would be "in the furtherance of justice," which the court must find in

10

the language of all of the listed mitigating circumstances, applies only if the court does *not* find that dismissal of the enhancement would endanger public safety. That interpretation gives meaning to the language in section 1385(c)(2) requiring the court to consider whether dismissal "would endanger public safety," and it consequently avoids rendering that language surplusage.

In contrast, Mendoza's interpretation gives no effect to the clause "unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385(c)(2).) That is, Mendoza's interpretation would require a court to dismiss any enhancement when application of the enhancement could result in a sentence greater than 20 years *regardless of whether dismissal would endanger public safety*. We avoid interpretations that render statutory language surplusage. (*Brennon B.*, *supra*, 13 Cal.5th at p. 691.) We also must avoid interpretations that lead to absurd results. (*People v. Bullard* (2020) 9 Cal.5th 94, 106.) On Mendoza's interpretation, dismissal of his firearm enhancement was statutorily required even though (1) the statute expressly invites consideration of whether dismissal of the enhancement would endanger public safety, and (2) the court found that it would. That is, according to Mendoza's interpretation, *the statute required the sentencing court to endanger public safety*. That cannot be what the Legislature intended.

---

order to dismiss (*id.*, subd. (c)(1)). In this way, the statute does not appear to give the court discretion, let alone a mandatory duty, to dismiss an enhancement if doing so would endanger public safety.

Additionally, Mendoza's interpretation would result in the implied repeal of various statutory enhancements. For example, if section 1385(c)(2)(C) required a court to dismiss any enhancement in which application "could result in a sentence of over 20 years" (*ibid.*), then courts would be required to dismiss firearm enhancements under subdivisions (c) and (d) of section 12022.53 because the enhancements respectively mandate sentences of 20 and 25 years (§ 12022.53, subds. (c), (d)). Similarly, courts would be required to dismiss gang enhancement allegations found true under subdivision (b)(4) of section 186.22 because that provision mandates imposition of indeterminate sentences. (§ 186.22, subd. (b)(4)(A)-(C).) We presume that the Legislature did not intend to repeal all of those enhancement statutes by implication. (*Lopez*, *supra*, 5 Cal.5th at p. 637.)

Our holding—that consideration of the mitigating factors in section 1385(c)(2) is not required if the court finds that dismissal of the enhancement would endanger public safety—is consistent with *People v. Walker* (2022) 86 Cal.App.5th 386 (*Walker*), *People v. Lipscomb* (2022) 87 Cal.App.5th 9, and *People v. Anderson* (Feb. 7, 2023, B320627) __ Cal.App.5th __ [2023 Cal.App. Lexis 85], the only published opinions involving the "shall be dismissed" language in the recent amendments to section 1385. (§ 1385, subd. (c)(2)(B)-(C).) All three cases hold that dismissal is not always required when a mitigating factor that contains "shall be dismissed" language applies. (*Walker*, *supra*, at p. 391 [addressing § 1385, subd. (c)(2)(B)]; *Lipscomb*, *supra*, at p. 15 [addressing § 1385(c)(2)(C)]; *Anderson*, *supra*, 2023 Cal.App. Lexis 85, at pp. *7-*8 [addressing

12

§ 1385, subd. (c)(2)(B) & (C)].)  None of the cases holds that dismissal is required even when it would endanger public safety.[5]

For all of the foregoing reasons, we reject Mendoza's interpretation of section 1385(c)(2)(C) as requiring a court to dismiss every enhancement resulting in a sentence of greater than 20 years regardless of whether dismissal would endanger public safety. We accordingly conclude that the trial court did not err by determining that section 1385(c)(2)(C) did not require it to dismiss the firearm enhancement under subdivision (c) of section 12022.53, given the court's finding that dismissal of the enhancement would endanger public safety.  Because we agree with the trial court's interpretation of section 1385(c)(2) and because the court found that dismissal of the firearm enhancement would endanger public safety, we need not and do not analyze how the "shall be dismissed" language in section 1385(c)(2)(C) operates when a trial court does not find that dismissal would endanger public safety.[6]

---

[5]    *Walker* also explained what it means for the court to "afford great weight" (§ 1385(c)(2)) to the mitigating factors listed in the statute.  (*Walker*, *supra*, 86 Cal.App.5th at pp. 391, 398-400.)  That issue is not presented in this case, so we express no opinion on it.

[6]    Although we leave for another day any questions of statutory interpretation not squarely presented in this case, we note that it is possible to interpret the statute in such a way as to give full effect to all of its provisions, as follows:  On the one hand, if the trial court finds that dismissal of an enhancement would endanger public safety, then it is hard to see how dismissal would further the interests of justice, so dismissal would not be authorized, let alone required.  (§ 1385(c)(1); see *ante*, fn. 5.)  On the other hand, if the court does not find that dismissal of the enhancement would endanger public safety, then the court must dismiss any enhancement that "could result in a sentence of over 20 years" (§ 1385(c)(2)(C)) or "all enhancements beyond a single enhancement" when multiple enhancements are proven (§ 1385, subd. (c)(2)(B)).  And if the court does not find that

B.    *The Trial Court Did Not Abuse Its Discretion*

We next address Mendoza's argument that the trial court abused its discretion by concluding that dismissal of the firearm enhancement would endanger public safety.  The People agree that we review that determination for abuse of discretion, but they contend that the court did not abuse its discretion.  We agree with the People on both points.

In general, we review for abuse of discretion the trial court's decision not to strike a sentence enhancement under section 1385, subdivision (a).  (*People v. Carmony* (2004) 33 Cal.4th 367, 371 (*Carmony*).)  Moreover, the determination of whether dismissal would endanger public safety being under section 1385(c)(2) is similar (though not identical) to the determination of whether "resentencing the petitioner would pose an unreasonable risk of danger to public safety" under subdivision (b) of section 1170.18, which we review for abuse of discretion.  (*People v. Jefferson* (2016) 1 Cal.App.5th 235, 242 (*Jefferson*).)  For both of these reasons, we conclude that abuse of discretion is the proper standard of review for the trial court's determination that dismissal of Mendoza's firearm enhancement would endanger public safety.

The abuse of discretion standard is highly deferential.  When, "'as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion "must not be disturbed on appeal *except* on a showing that the court exercised its

---

dismissal of the enhancement would endanger public safety and the defendant proves any of the remaining seven mitigating circumstances (§ 1385, subd. (c)(2)(A), (D)-(I)), then the proven circumstances weigh "greatly in favor of dismissing the enhancement" (§ 1385(c)(2)), but the court is not required to dismiss the enhancement if the court otherwise concludes that dismissal is not "in the furtherance of justice" (§ 1385(c)(1)).

14

discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice."'" (*Jefferson*, *supra*, 1 Cal.App.5th at pp. 242-243; *Carmony*, *supra*, 33 Cal.4th at pp. 376-377.)

Mendoza argues that "the court abused its discretion by declining to dismiss the enhancement, because no evidence reasonably suggested that dismissal of the enhancement in the circumstances of this case would endanger public safety, i.e., that it 'would result in physical injury or other serious danger to others.' (§ 1385(c)(2))." We disagree.

The trial court determined that dismissal of the enhancement would result in a sentence of less than six years in prison, which would require Mendoza's immediate release. The court reasoned that such a reduction would "pose[] a likelihood that the defendant will commit a crime that results in physical injury or serious danger to others." In reaching its conclusion, the court considered that Mendoza discharged a gun with victims present in a residence during a home invasion robbery, and the court found that the circumstances involved "incredibly harmful and dangerous conduct." The court explained that a person who "commit[s] this type of an offense is a serious threat to society and a relatively long prison sentence is necessary to protect the public and keep the defendant away from the public and to provide time for the defendant to become rehabilitated." Given the court's consideration of the circumstances of the crime and the court's determination that a long sentence was necessary for Mendoza to become rehabilitated after committing such a crime, we cannot say that the court's determination

15

that dismissal of the enhancement "would endanger public safety" (§ 1385(c)(2)) was "so irrational or arbitrary that no reasonable person could agree with it" (*Carmony*, *supra*, 33 Cal.4th at p. 377).

We reject Mendoza's argument that we must remand for resentencing because the trial court did not consider certain mitigating factors—such as Mendoza's age when the offense was committed, his 16 years of incarceration for this crime, and his "demonstrated commitment to rehabilitation"—in determining whether dismissal would endanger public safety. First, section 1385(c)(2) does not require the trial court to consider any particular factors in determining whether "there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." Mendoza's reliance on *People v. Ochoa* (2020) 53 Cal.App.5th 841 is therefore inapposite because there the trial court was statutorily required to consider youth-related mitigating circumstances under section 190.5, subdivision (b), before sentencing the defendant to life without the possibility of parole. (*Ochoa*, *supra*, at pp. 850-852.) Second, in resentencing Mendoza, the court did consider Mendoza's age and reduced his sentence for the robbery convictions accordingly. Third, the court was free to reject Mendoza's unsubstantiated account of his rehabilitative efforts and renunciation of his gang, and the court was therefore free to conclude that Mendoza needed to serve a longer sentence in order to be fully rehabilitated so as not to endanger public safety.

16

For all of these reasons, we conclude that the trial court did not abuse its discretion by concluding that dismissing the firearm enhancement under section 12022.53, subdivision (c), would endanger public safety.

DISPOSITION

The judgment is affirmed.

CERTIFIED FOR PUBLICATION

MENETREZ
J.

We concur:

MILLER
Acting P. J.

FIELDS
J.

17